IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ladd W. Beck, et al.,                                                    Case No. 3:09CV2179

          Plaintiffs

    v.                                                                              ORDER

Michael D. Benton, et al.,

          Defendants

      This is a civil rights case by former Village of Gibsonburg Solicitor, Ladd W. Beck and former Gibsonburg Councilman, Michael J. Fork against Michael D. Benton, Gibsonburg Police Chief and the Village of Gibsonburg (the Village). Plaintiffs assert three claims under 42 U.S.C. § 1983: 1) defamation; 2) failure to train; and 3) violation of the Fourteenth Amendment. Plaintiffs also assert state law causes of action against defendants for: 1) malicious, bad faith and wanton or reckless conduct; 2) libel/slander per se; 3) invasion of privacy; 4) false light; 5) gross negligence; and 6) *respondeat superior*. Finally, plaintiffs assert a claim that Chief Benton acted outside the scope of his employment, and as such, is personally liable to plaintiffs.

      Pending is defendants' motion for partial judgment on the pleadings. [Doc. 6] For the reasons discussed below, defendants' motion shall be granted.

**Background**

In January, 2006, Chief Benton began an investigation into several officials, including Beck and Fork. The investigation looked into possible conflicts of interest, deceptive statements, and legal and ethical violations. At that time, Beck served as the Solicitor Attorney for the Village and Fork served as an elected Village councilman. Beck was Solicitor Attorney until December 31, 2006, and Fork was a councilman until January, 2008.

Chief Benton provided the results of his investigation to the Sandusky County Prosecutor and the Ohio Ethics Commission. In his report, Chief Benton accused plaintiffs of conflicts of interest, legal and ethical violations, violations of open meetings laws and obstruction of justice.

Plaintiffs allege that while the investigation was ongoing, Chief Benton made knowingly false public statements about the investigation. Specifically, plaintiffs allege that Chief Benton stated that Beck: "controll[ed] Village Planning Commission meetings (and) deliberately created expensive roadblocks" to a development project; "lied" and made "obviously deceptive statement[s]" to local legislators; and "billed the Village $2,486.00 for prosecuting a minor misdemeanor complaint." [Doc. 1-2, at 7-8].

Plaintiffs allege that Chief Benton stated that Fork: "had improper and conflicting business relationships with . . . Beck and the Village of Gibsonburg[;]" was "doing everything in his power to cause trouble for Benton"; "engaged in violations of the open meetings laws[;]" and "'unduly obstructed' Benton." [Doc. 1-2, at 4].

Plaintiffs further allege that Chief Benton provided the results of the confidential law enforcement investigation to the media in September, 2008.

In November, 2008, both the Ottawa County Prosecutor and the Sandusky County Prosecutor declined to pursue any charges. The Ohio Ethics Commission also declined to take action. Chief Benton publicly criticized these decisions and called for plaintiffs to be tried criminally.

Plaintiffs allege that Chief Benton made his statements and disclosures in bad faith and with a malicious purpose. Plaintiffs further assert that as a result they both suffered physical, emotional and economical distress, loss of income, damage to their reputations and were placed before the public in a false light.

Defendants have now filed a motion for partial judgment on the pleadings.

**Standard of Review**

A Rule 12(c) motion is analyzed using the same standard of review as a Rule 12(b)(6) motion. *Tucker v. Middleburg-Legacy Place*, 539 F. 3d 345, 549 (6th Cir. 2008).

A claim survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,     U.S.    , 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, *supra*, 129 S. Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 557) (internal quotation omitted).

3

I must also "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555; *see also Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Discussion

To prevail on a claim under 42 U.S.C. § 1983, plaintiffs must prove: 1) defendants were acting under the color of state law; and 2) a violation of a federal right. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 432, 490 (6th Cir. 2002). Section 1983 provides no relief unless a constitutional, or federal statutory right has been violated. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

### A. Defamation

In count one, plaintiffs allege that Chief Benton's actions "constitute a defamation" and "caused plaintiffs to be deprived of valuable property rights and income." [Doc. 1-2, at 8].

To prevail on a § 1983 claim, a plaintiff must identify a clearly established constitutional or federal right that defendants violated. Defamation is not a constitutional violation and is therefore not actionable under § 1983. *Paul v. Davis*, 424 U.S. 693, 711-12 (1976); *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 530-31 (6th Cir. 2005) (unpublished disposition). This claim must therefore be dismissed.

### B. Fourteenth Amendment

Count three of plaintiffs' complaint alleges that the "acts and omissions" of defendants give rise to a claim for relief under the Fourteenth Amendment. [Doc. 1-2, at 13]. This claim is vague, conclusory, and does not specifically identify which Fourteenth Amendment right plaintiffs allege

4

defendants violated. This alone may be grounds for dismissal, *see Johnson v. Leonelli*, 230 F.3d 1358 (6th Cir. 2000) (unpublished disposition), however, because plaintiffs' opposition asserts that they have adequately alleged due process claims, I address whether plaintiff's complaint pleads facts supporting a due process violation.

### 1. Procedural Due Process

To prevail on a procedural due process claim, a plaintiff must establish: 1) a life, liberty or property interest; 2) state deprivation of that interest; and 3) failure by the state to provide adequate process prior to such deprivation. *E.g., Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009).

With regard to whether a government employee has a property right in such employment, the Supreme Court has stated that "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire" for it and "more than a unilateral expectation of it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Plaintiff must, rather, "have a legitimate claim of entitlement to" the employment. *Id.*; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997) ("Government employment amounts to a protected property interest when the employee is 'entitled' to continued employment.").

A public employee with a property interest in continued employment is deprived of that interest by his employer if the employer constructively discharges him by forcing him to resign involuntarily. *Rhoads v. Bd. of Educ.*, 103 F. App'x 888, 894 (6th Cir. 2004) (unpublished disposition) (citations omitted). Employee resignations are, however, generally presumed to be voluntary. *Id.* at 895 (citing *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999)). "[I]f a plaintiff resigns of her own free will, even as a result of the defendant's actions, then she

voluntarily relinquishes her property interest in continued employment, and the defendant cannot be found to have deprived her of that interest without due process of law." *Id.*

Even assuming plaintiffs had protectable property interests in their jobs, I agree with defendants that plaintiffs do not allege facts supporting a claim that defendants' actions deprived plaintiffs of that interest. Beck served as the Solicitor Attorney for the Village. Plaintiffs allege that defendants' actions "forced" Beck "to withdraw his intention to renew his long-standing employment with defendant Village of Gibsonburg." [Doc. 1-2, at 8]. Beck left his job as Solicitor Attorney December 31, 2006. This was well before many of the actions about which he complains—including, most significantly, Chief Benton's release of the contents of the investigation to the media.

Fork served as an elected village councilman. While plaintiffs' complaint states that defendants' actions "forced plaintiff Fork to resign from his position," [Doc. 1-2, at 8], plaintiffs' memorandum in opposition states that "Fork will assert that defendant Benton's actions were considered in [Fork's] decision to resign but not that [Fork] was required to resign." [Doc. 8, at 13]. The complaint and pleadings therefore show that Fork's decision to resign was voluntary. Fork's resignation, additionally, came nine months prior to Chief Benton's release of information to the media.

Plaintiffs have failed to allege facts supporting an allegation that defendants' actions deprived them of a property interest, and thus have failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, *supra*, 550 U.S. at 547. The claims that plaintiffs were "forced" to resign or not renew their employment based on Benton's actions are "naked assertions

6

devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, *supra*, 550 U.S. at 555) (internal quotation omitted). Plaintiffs' procedural due process claim is therefore dismissed.

## 2. Substantive Due Process

To prevail on a substantive due process claim, plaintiff must allege either "the denial of a right, privilege, or immunity secured by the Constitution or federal statute" or official conduct that "shocks the conscience." *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (1993). Because plaintiff does not allege a violation of a fundamental right, he must satisfy the "shocks the conscience" test. *See Rochin v. California*, 342 U.S. 165, 211 (1952).

Conduct that shocks the conscience is an infringement upon a constitutional guarantee that is "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 169. The state must engage in conduct "so 'egregious' that it can be said to be 'arbitrary in the constitutional sense.'" *Ewolski v. City of Brunswick*, 287 F.3d 492, 510 (6th Cir. 2002) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Determining whether the behavior "shocks the conscience" rests on the unique facts of each case. *Id.*

An investigation of potential corruption does not rise to the level of egregious behavior that shocks the conscience. Plaintiffs allege that Chief Benton conducted a "malicious investigation" and made bad faith and malicious false statements in the course of that investigation. Plaintiffs, however, failed to plead any facts beyond legal conclusions that would make their claim plausible on its face. *See Twombly*, *supra*, 550 U.S. at 547; *Iqbal*, *supra*, 129 S. Ct. at 1949.

Plaintiffs generally allege that "[m]any of the investigation statements and conclusions . . . were false and defendant Benton knew they were false." [Doc. 1-2, at 6-7]. Plaintiffs, however, only specifically allege the falsity of one statement (a statement made by Chief Benton about a bill

7

Beck submitted to the Village on June 29, 2000). Even assuming Chief Benton made one false statement in the course of his investigation, this action does not rise to the level of conduct that "shocks the conscience."

Plaintiffs have therefore failed to plead facts to support a claim that Chief Benton's actions in undertaking an investigation and revealing certain information about that investigation to the media were "so 'egregious' that [they] can be said to be 'arbitrary in the constitutional sense.'" *Ewolski*, *supra*, 287 F.3d at 510; *see also Brockinton v. City of Sherwood*, 503 F.3d 667, 673 (8th Cir. 2007) (though investigator's judgment about plaintiff's conduct mistaken, conduct of investigation did not "rise to the level of recklessness that shocks the conscience"). Consequently, plaintiffs' substantive due process claim must be dismissed.

## C. *Monell* Claim

To establish municipal liability under § 1983, plaintiffs must establish: 1) harm due to a constitutional violation; and 2) the city was responsible for that violation. Municipalities are liable for harms resulting from a constitutional violation only when the injury resulted from an "execution of a [municipality's] policy or custom" and a municipality cannot be held liable on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). To prove the existence of a municipal "policy or custom" a plaintiff may look to "a policy of inadequate training or supervision." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

A challenge to a municipality's training practices cannot stand under § 1983 if whatever the allegedly ill-trained official did or did not do did not violate plaintiffs' constitutional rights. *Wilson v. Morgan*, 477 F.3d 326, 340 (6th Cir. 2007).

In count two, plaintiffs allege that the Village failed "to properly screen, supervise, discipline, transfer, counsel or otherwise control police officers who are known or should have been known to engage in improper conduct," and a "failure to have and implement procedures, safeguards, guidelines and training to prevent disclosures of ongoing criminal investigations." [Doc. 1-2, at 12-13].

Plaintiffs have not identified, nor do the facts support, a claim that the individual defendant violated their constitutional rights. Plaintiffs' *Monell* claim against the Village must therefore also be dismissed.

### D. State Law Claims

Finally, plaintiffs allege six state law causes of action. Because I have granted defendants' motion on plaintiffs' § 1983 claims, I dismiss the state law causes of action for want of diversity or other jurisdiction, without prejudice. *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988).

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendants' motion for partial judgment on the pleadings [Doc. 6] be, and the same hereby is granted. A scheduling conference is set for February 16, 2010 at 3:00 p.m.

So ordered.

s/James G. Carr<br>
James G. Carr<br>
Chief Judge